522 A.2d 1144

**Gregory L. SUTLIFF, Appellant,**

v.

**Carlene SUTLIFF.**

**Gregory L. SUTLIFF**

v.

**Carlene SUTLIFF, Appellant.**

Superior Court of Pennsylvania.

Argued Feb. 27, 1986.

Decided Jan. 14, 1987.

Reargument Denied March 27, 1987.

Petition for Allowance of Appeal Granted Aug. 12, 1987.

See also, 502 A.2d 1231.

506

Bonnie D. Menaker, Harrisburg, for appellant (at 354) and appellee (at 361).

Ronald Katzman, Harrisburg, for appellant (at 361) and appellee (at 354).

Before CAVANAUGH, TAMILIA and CERCONE, JJ.

TAMILIA, Judge:

Gregory and Carlene Sutliff were married in 1960. The parties separated in October of 1981 and Gregory Sutliff filed a complaint in divorce on February 5, 1982. A master was appointed in April of 1982 and ten hearings were held before a report was filed on April 2, 1984. Appellant/husband filed eighty (80) exceptions to the report and appellee/wife filed fifty (50) exceptions. On December 26, 1984, a stipulation entered into by the parties was filed providing for, among other things, a bifurcated divorce. A final divorce decree was entered that same day.

510

On May 7, 1985, the Opinion and Order of the Court providing for equitable distribution was filed. Appellant/husband filed his notice of appeal and appellee/wife cross appealed from this Order. The issues raised therein are presently before us.

The provisions of 23 P.S. § 401(e)[1] and (f)[2] are at the core of appellant/husband's initial objections to the equitable distribution Order. Specifically challenged are the application of the tracing concept to property covered by sections 401(e)(1) and 401(e)(3) along with the standard of proof required by the court to overcome the presumption of marital property established in section 401(f).

In order to properly discuss appellant's specific objections to the court's actions, we think it appropriate to initially

1. 23 P.S. § 401(e) provides:

(e) For purposes of this chapter only, "marital property" means all property acquired by either party during the marriage except:

(1) Property acquired in exchange for property acquired prior to the marriage except for the increase in value during the marriage.

(2) Property excluded by valid agreement of the parties entered into before, during or after the marriage.

(3) Property acquired by gift, bequest, devise or descent except for the increase in value during the marriage.

(4) Property acquired after separation until the date of divorce, provided however, if the parties separate and reconcile, all property acquired subsequent to the final separation until their divorce.

(5) Property which a party has sold, granted, conveyed or otherwise disposed of in good faith and for value prior to the time proceedings for the divorce are commenced.

(6) Veterans' benefits excempt from attachment, levy or seizure pursuant to the act of September 2, 1958, Public Law 85–857, 72 Statute 1229, as amended, except for those benefits received by a veteran where such veteran has waived a portion of his military retirement pay in order to receive Veteran's Compensation.

(7) Property to the extent to which such property has been mortgaged or otherwise encumbered in good faith for value, prior to the time proceedings for the divorce are commenced.

2. 23 P.S. § 401(f) provides:

(f) All property, whether real or personal, acquired by either party during the marriage is presumed to be marital property regardless of whether title is held individually or by the parties in some form of co-ownership such as joint tenancy, tenancy in common or tenancy by the entirety. The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection (e).

review the concept of tracing and the standard of proof required to overcome the presumption of marital property.

23 P.S. § 401(e)(1) establishes the concept of tracing by providing an exclusion to the rule that all property acquired during the marriage is marital property. This section states that property exchanged for property acquired prior to marriage is non-marital except for the increase in value. Thus to catagorize an asset as non-marital within this section, a party must be able to show that a specific piece of property was obtained in exchange for another specific piece of property. This systematic following of one asset into another is "tracing".

Although 23 P.S. § 401(e)(3) does not have a specific provision calling for tracing, we have applied the concept to it because even though there was not a provision excepting property acquired in exchange for property acquired by gift, bequest, devise or descent, the exchange of property excluded under property set forth within the section did not change its character as separate property. In *Winters v. Winters*, 355 Pa.Super. 64, 512 A.2d 1211 (1986), the appellant asserted section 401(e)(3) would destroy the identity of the property and remove it from the statutory exclusion. We rejected this argument and concluded, based upon an overall reading of the statute, that an exchange does not destroy the character of the gift or inheritance.

As stated in *Winters:*

This is a rational and necessary conclusion in the interpretation of these sections. In providing for the exchange factor in section 401(e)(1) the legislature made clear that prior owned property did not lose its character by an exchange for other property during the marriage. It could easily be argued otherwise that under section 401(e) and (f) it could be construed marital property since this would be the first instance when activity concerning vesting or ownership occurred during the marriage.

The significant difference between the two is that prior owned property came into possession of the acquiring spouse before the marriage, whereas the gifts and devise

came into possession subsequent to the marriage, and unlike other property acquisitions, were specifically excluded. In section 401(e)(1) the legislature needed to make clear prior owned property did not change its character by changing its form during the marriage. In section 401(e)(3), the character of the property was established as separate property during the marriage and there was no need to clarify the fact that a subsequent change of form did not alter its character.

*Winters* 355 Pa.Superior Ct. at 71, 512 A.2d at 1215.

Having established that tracing is appropriate under the statute, the standard of proof necessary to invoke the exemption from marital property available under sections 401(e)(1) and (3) must be addressed.

It is clear under section 401(f) that a presumption is established in favor of classifying property as marital when it is acquired during the marriage. The section requires that in order to overcome this presumption, a showing must be made that the property was acquired by a method listed in 23 P.S. § 401(e).

The standard of proof necessary to make this showing has not been specifically addressed by this Court. After a review of applicable case law, we think that a clear and convincing standard should be required to overcome the presumption of marital property.

■ The establishment of a presumption, by its very nature, indicates a preference by the legislature for facts to be construed in a certain manner. Absent a presumption in this statute, it would be a question of whether, by a preponderance of the evidence, a party could demonstrate that property was acquired through one of the methods listed in section 401(e). By incorporating section 401(f) into the divorce code, it follows that a result different from that which would occur in its absence was desired. *See Fireman's Fund Insurance v. Nationwide Mutual Insurance,* 317 Pa.Super. 497, 464 A.2d 431 (1983); *see also* 1 Pa.C.S.A. §§ 1921, 1922.

In further support of this holding, we note that the clear and convincing standard has been applied when dealing with other closely related presumptions.

This Court, in *Madden v. Madden,* 336 Pa.Super. 552, 486 A.2d 401 (1985), discussed the presumption of a gift and creation of an estate by the entireties when property or an account is placed in the names of a husband and wife. In order to overcome this presumption, the court determined clear and convincing evidence to the contrary was required. *Madden, supra,* citing *In Re Holmes Estate,* 414 Pa. 403, 200 A.2d 745 (1964). *See also Brown v. Brown,* 352 Pa.Super. 267, 507 A.2d 1223 (1986). Clear and convincing evidence has also been required before severing rights of parents in natural children. *In Re Adoption of Michael J.C.,* 506 Pa. 517, 486 A.2d 371 (1984).

Additional examples of the application of a clear and convincing standard were set forth by the Common Pleas Court of Mercer County in *Fox v. Fox,* 22 D. & C.3d 1 (1982). In a well reasoned Opinion in support of finding the need for clear and convincing evidence to overcome the presumption of marital property in 23 P.S. § 401(f), the court noted instances where such proof is required:

7. Clear and convincing proof is required: to establish a claim for wages for personal services to a decedent: *Mooney's Estate* 328 Pa. 273, 194 Atl. 893 (1937); to establish fraud, *Gilberti v. Coraopolis Trust Company,* 342 Pa. 161, 19 A.2d 408 (1941); to establish reformation of a contract on grounds of a mistake, *Boyertown National Bank v. Hartman,* 147 Pa. 558, 23 Atl. 842 (1892); to establish a resulting trust, *Hale v. Sterling,* 369 Pa. 336, 85 A.2d 849 (1952); to establish adverse possession, *Stevenson v. Stein,* 412 Pa. 478, 195 A.2d 268 (1963); to overcome the presumption of gift, *Butler v. Butler,* 464 Pa. 522, 347 A.2d 477 (1975), and Dzierski Estate, supra; to set aside a transaction on the basis of incompetency, *Elliott v. Clawson,* 416 Pa. 34, 204 A.2d 272 (1964); and to establish that an inter vivos gift to an attorney from a

client was not based on fraud or undue influence, 7 Am.Jur.2d Attorney at Law, § 123.

*Fox, supra* at 9, footnote 7.

■ In order to implement the policy of the Divorce Code to "effectuate economic justice ... and insure a fair and just determination and settlement of (their) property rights", 23 P.S. § 102(a)(6), we think it proper to require clear and convincing evidence to overcome the presumption in section 401(f) that property obtained during the marriage is marital property.

Although exemptions have been statutorily created and tracing of assets approved, we think it appropriate to require a higher standard of proof before depriving one spouse of an interest in property acquired during the marriage.

Clear and convincing proof is a standard frequently imposed in civil cases where the wisdom of experience has demonstrated the need for greater certainty ... to sustain claims which have serious social circumstances or harsh or far reaching effects on individuals.

32A C.J.S. Evidence § 1023.

We think this is such an instance and thus adopt the requirement of clear and convincing proof to overcome the presumption of marital property in section 401(f). With this in mind, we now direct our attention to the questions raised by appellant/husband on appeal.

Initially, appellant contends the trial court abused its discretion and misapplied the law in failing to determine certain assets were non-marital. He maintains that non-marital assets can be traced into the acquisition of stock in Commonwealth National Bank, Digital Systems, B & M Stutzman Chevrolet and Pennsylvania Leasing; a property at 499 North 25th Street and Sutliff Chevrolet Company. Based on this tracing, under appellant's theory, the assets should have retained their status as non-marital.

■ In reviewing a court's actions in an equitable distribution of property, we are limited to determining whether

there was an abuse of discretion. *Brown, supra. Sergi v. Sergi*, 351 Pa.Super. 588, 506 A.2d 928 (1986). Although the rules of procedure provide for the appointment of a master to conduct a hearing, prepare a report and make recommendations (Pa.R.C.P. 1920.51), the final responsibility of making the distribution rests with the court. *Morschhauser v. Morschhauser*, 357 Pa.Super. 339, 516 A.2d 10 (1986). Our review is thus based on the court's distribution of property in light of the factors set forth in the Divorce Code (23 P.S. §§ 401(d)(1)–(10).)

Appellant asserts that the master improperly held tracing under 23 P.S. § 401(e)(1) could only be extended to one transaction and that property acquired by gift, bequest, devise or descent (section 401(e)(3)) must remain in-kind to retain its non-marital identity, thus prohibiting tracing under this section. Appellant also contends that the clear and convincing standard of proof required by the master and adopted by the court to overcome the presumption of marital property established in 23 P.S. § 401(f) is erroneous.

Based upon our prior discussion, we cannot agree that it was error to invoke the clear and convincing standard of proof to support the tracing claims. Our review of the record likewise leads us to the conclusion that there was no abuse of discretion by the court in determining whether assets were marital property. We will review each of the specific assets set forth above and further clarify our reasoning.

■ *A. Commonwealth National Bank Stock*—The court found 12,500 shares were held as of the date of separation; 6,920 of these shares were in Clifford Trusts for the benefit of the children. The court held the placement of this stock into the trusts did not affect its status as marital or non-marital. The court then found clear and convincing evidence was presented to demonstrate that 3,456 shares were non-marital because they were obtained as a gift by appellant from his father. It was further determined that appellant was unable to meet his burden of proof in attempting to show other shares should also be

classified as non-marital. The court concluded that 3,456 shares were non-marital and 9,044 shares were marital.

Appellant argues that the proceeds of a life insurance policy and the pension benefits of his father should properly have been traced to the purchase of Commonwealth National Bank Stock. The court rejected this contention and agreed with the master who found the funds received were commingled in a joint checking account used for various expenditures of the family and sufficient evidence was not produced to show that the stock was purchased with the insurance and pension benefits. Although we do not agree with the master that section 401(e)(3) requires property acquired by gift, devise or descent to remain in-kind or lose its identity as non-marital property, that question is not at issue here. The basis for the court's ruling as to this asset was the lack of sufficient evidence to support tracing. We find no abuse of discretion in this action by the court.

*B. Digital Systems Corporation*—The court distributed 47,078 shares based on a determination that the funds used to buy the stock had been "transmuted" by commingling with other marital funds and clear and convincing evidence was not presented to trace the asset to non-marital funds.

Appellant maintains that the stock was purchased with funds received on account of his father's death (pension and life insurance) and the court erred in not properly tracing these non-marital assets to the purchase of Digital Stock. He also claims that even though a portion of the stock was purchased with funds drawn on a joint account, an application of the Multiple Party Accounts Act, 20 Pa.C.S.A. § 6301, et seq., would require basing the status of the funds on who contributed them to the account.

■ We do not support the lower court's application of a transmutation theory. As stated in *Winters, supra,* "We ... have rejected the 'inception of title' 'source of funds' and 'transmutation of property theories' in Pennsylvania. *Winters, supra* 355 Pa.Superior Ct. at 72, 512 A.2d at 1215.

In *Anthony v. Anthony*, 355 Pa.Super. 589, 514 A.2d 91 (1986) (Concurring and Dissenting Opinion by Tamilia, J.), these theories were expounded upon. The transmutation theory, which holds that where property is commingled by title, financial or work contribution, it is presumed to be converted to marital property, is rejected and the reasons set forth as follows:

... We cannot adopt any of these theories in their entirety. The variation and nuances in the statutes of the various states on equitable distribution and marital property and the different interpretations of "increased value" and "acquire" as it relates to marital property, dictate we establish our concepts on the basis of our interpretation of Pennsylvania law rather than adopting the interpretation of the courts of one or the other of our sister states.

*Anthony*, Concurring and Dissenting Opinion 355 Pa.Superior Ct. at 610, 514 A.2d at 102.

■ Rejection of the court's use of the transmutation theory does not require a reversal, for the court also supported the distribution by concluding there was not sufficient evidence to find the stock was traceable to non-marital funds.

■ We also reject appellant's argument that the status of funds in a joint account should be based upon contribution. When "an account is placed in the names of a husband and wife, a gift, and the creation of an estate by the entireties is presumed even though the funds used to ... establish the account were exclusively those of [one spouse]." *Brown, supra* 352 Pa.Superior Ct. at 273, 507 A.2d at 1225 citing *In re Holmes, supra* 414 Pa. at 406, 200 A.2d at 747.

Based on the above discussion, we find no abuse of discretion by the court in determining the Digital Stock was a marital asset.

■ *C. B & M Stutzman Chevrolet*—The court found this asset to be entirely marital by rejecting appellant's

contention that the funds used in the purchase were traceable to non-marital assets. This action by the court was once again based upon appellant's failure to meet his burden of proof.

Appellant maintains this asset was purchased with inherited funds and the proceeds from the sale of gold which had previously been purchased with a combination of inherited funds and earnings as well as the proceeds from the sale of an airplane.

Based on our review of the record, we hold the trial court's finding was appropriate and agree the burden of proof was not met to overcome the presumption of marital property.

■ *D. Pennsylvania Leasing*—The court found 37 shares of Pennsylvania Leasing to be marital assets. Appellant contends eight of these shares should be non-marital because purchased after the date of separation.

The court based its decision on the inconclusiveness of the date of purchase and the fact that the stock was purchased with funds from a marital account. We find no abuse of discretion in this determination.

■ *E. 499 North 25th Street*—This property was conveyed to appellant by his mother for $62,750 and the undisputed value at the time of the hearing was $155,000. The court held the entire value was a marital asset finding appellant failed to prove the purchase funds were non-marital. Since the property was purchased during the marriage, any increase in value was also considered marital in nature by the court.

Appellant argues that the value at the time of purchase was greater than the price paid and that difference should be considered a gift. The remainder he contends is solely due to inflation and other market funds and should not be considered a marital asset.

■ We find no basis to reverse the lower court as to this asset. In addition, we note that an increase in value

caused by inflation or market forces is a marital asset under the provisions of section 401(e)(1) and (3). *See Anthony, supra,* for a detailed discussion of this issue.

*F. Sutliff Chevrolet*—The court held 1,050 shares to be marital and 500 shares non-marital and valued the stock at $1,900,000. Appellant contends once again that the court erred in not tracing certain stock purchases to non-marital assets. He also asserts that the value given is not proper. We can find no abuse of discretion by the court in its determination that the burden of proof was not sustained by appellant. We will address the valuation issue when we review cross-appellant/wife's claims.

▉ The next issue we will address is appellant's assertion that the court erred in failing to identify the marital residence as marital property, to assign a value to it and to distribute it.

The court found that the stipulation entered into by the parties, which had specific provisions for the sale of the house and distribution of funds, removed the residence from equitable distribution consideration. We agree and refer to 23 P.S. § 401(e)(2) which provides for an exclusion from marital property such "property excluded by valid agreement of the parties entered into before, during or after the marriage." We think the court acted properly by incorporating the agreement into its equitable distribution order and distributing the property in this manner.

Appellant next challenges the equitable distribution claiming the court failed to give weight to his contribution of inherited assets and gifts toward the acquisition of marital property.

Our review of this issue is limited as stated prior to a determination of whether there was an abuse of discretion by the lower court. *Brown, supra; Lee v. Lee,* 352 Pa.Super. 241, 507 A.2d 862 (1986). To make this determination, we must evaluate the decision of the lower court in light of

520

its application of the guidelines set forth in 23 P.S. § 401(d).[3]

 The court essentially agreed with the findings of the master and we find this to be proper. The master thoroughly discusses the factors in section 401(d) and applies them to the facts of the case. We do not evaluate the propriety of the distribution order upon our agreement with the courts actions nor do we find a basis for reversal in the court's application of a single factor. Rather, we look at the distribution as a whole, in light of the court's overall application of the 401(d) factors. If we fail to find an abuse of discretion, the Order must stand. *See Sergi, supra; Semasek v. Semasek,* 331 Pa.Super. 1, 479 A.2d 1047 (1984).

The present case indicates no abuse of discretion in applying the factors in the Divorce Code and appellant's claim is rejected.

 Appellant's final two arguments are also without merit. First, he contends the practice of requiring litigants to pay master's fees including the cost of the master's law

3. 23 P.S. § 401(d) provides:

(d) In a proceeding for divorce or annulment, the court shall, upon request of either party, equitably divide, distribute or assign the marital property between the parties without regard to marital misconduct in such proportions as the court deems just after considering all relevant factors including:

(1) The length of the marriage.

(2) Any prior marriage of either party.

(3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of the parties.

(4) The contribution by one party to the education, training, or increased earning power of the other party.

(5) The opportunity of each party for future acquisitions of capital assets and income.

(6) The sources of income of both parties, including but not limited to medical, retirement, insurance or other benefits.

(7) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker.

(8) The value of the property set apart to each party.

(9) The standard of living of the parties established during the marriage.

(10) The economic circumstances of each party at the time the division of property is to become effective.

clerk is unconstitutional because it denies access to the courts. He also claims retroactive application of section 401 of the Divorce Code is unconstitutional.

We agree with the court that requiring payment of master's fees is a court cost which can be properly assessed under section 401(b) which provides in pertinent part:

§ 401(b)

The court may order alimony, reasonable counsel fees and expenses pending final disposition of the matters provided for in this subsection and upon final disposition, the court may award costs to the party in whose favor the order or decree shall be entered, or may order that each party shall pay his or her own costs, or may order that costs be divided equally as it shall appear just and reasonable.

Appellant does not contend he is unable to pay the costs but rather that any imposition of master's fees is unconstitutional. We cannot agree.

As to the question of the constitutionality of retroactive application, we believe *Bacchetta v. Bachetta*, 498 Pa. 227, 445 A.2d 1194 (1982) is controlling and the court's rejection of appellant's argument on that basis proper.

We next address the issues raised by cross-appellant/wife. First we will dispose of the wife's contention that the court failed to balance equitably the factors involved in determining the proper amount of marital assets awarded to her.

Our discussion of the court's action in response to appellant/husband's claim that the Order was not equitable is equally applicable to the wife's assertion. The wife's contention to the contrary must fail for the same reasons the husband's argument was rejected. The percentages applied by the court in distributing the assets were explained by the master in relation to the section 401(d) factors. We find no abuse of discretion by the court in adopting this reasoning and dividing the assets as it did.

The other issues raised by Mrs. Sutliff involve the date of valuation employed by the court, the valuation established for Sutliff Chevrolet, the disposition of marital assets in the form of vehicles and the failure of the court to award rent and a share of the earnings from marital assets held by the husband.

■ The wife maintains it was an abuse of discretion to value the assets as of the date of separation which is October 21, 1981. For the following reasons, we agree with this contention.

The court was correct in its holding that the Divorce Code is silent on the question of what date is to be used for valuation of property. The court considered its choices to be between the date of separation and the date the complaint is filed and because of the relatively short time between the two events found no error by the master in choosing the date of separation.

This Court has recently addressed the issue of valuation in *Sergi, supra. See also Winters, supra; Morschhauser, supra.* In *Sergi*, after reviewing the relevant sections of the Divorce Code, we concluded that the trial court is free to select the date which best serves to provide for economic justice between the parties. The rationale for such a holding was set forth as follows:

As has already been mentioned, the drafters of the Divorce Code have provided that the parties are to submit to the court an initial valuation of their property at the time the action is commenced. To mandate that a trial court be limited to effecting an equitable distribution based only on this valuation information could result in a distribution based on stale financial data. This would hardly be in keeping with the overall declared policy of the Commonwealth which is to:

(e)ffectuate economic justice between parties who are divorced or separated and grant or withhold alimony according to the actual need and ability of the parties

and *insure a fair and just determination and settlement of their property rights.*

23 P.S. § 102(a)(6) (emphasis added).

Likewise, to require a trial court to value property as of the date of separation may also result in the use of stale financial data and subsequent inequitable distribution of marital property.

*Sergi, supra* 351 Pa.Superior Ct. at 593, 506 A.2d at 931.

The concept that a court may choose for valuation any time between separation and distribution is further explained in *Winters, supra,* where we stated: "Valuation of property lies on a continuum so that equity requires a determination of the most fair point on that continuum to establish value." *Winters, supra* 355 Pa.Superior Ct. at 70, 512 A.2d at 1214 n. 3.

Based on this reasoning, we must remand to the lower court to establish new values for certain assets. Our decision is based upon the passage of time since the assets were valued, the possible fluctuations in value which may have occurred and the substantial sums which would be involved in such fluctuations.

This is particularly important because of the stipulation agreement in which Mrs. Sutliff has waived the right to in-kind distribution of stock in Sutliff Chevrolet, Pennsylvania Leasing Co., American Technology, Digital Systems Corp., B & M Chevrolet and Sutliff Enterprises in exchange for a cash value payment.

Although we are reluctant to take any measure which will prolong this already lengthy litigation we are compelled to do so by the legislative mandate to insure a fair and just settlement.

As stated prior, the percentages established for distribution of the various assets do not constitute an abuse of discretion and should stand. The shares of stock in American Technology and Digital Systems are publicly traded and a current value is easily ascertainable. The shares in Commonwealth National Bank are not included in the stipu-

lation so they are to be divided in-kind. The values of Sutliff Chevrolet, Pennsylvania Leasing and B & M Chevrolet, however, must be established so as to reflect current value.

■ Because we are remanding to reestablish the value of Sutliff Chevrolet, we need not address the issue of whether the value established by the court for Sutliff Chevrolet was proper. We do find merit in Mrs. Sutliff's contention that the court erred in its disposition of the vehicles sold by Mr. Sutliff to Sutliff Chevrolet.

The testimony indicates that certain vehicles were purchased from Sutliff Chevrolet and were marital assets. The title to these vehicles was kept in the name of the dealership for insurance purposes. After separation Mr. Sutliff sold these vehicles back to Sutliff Chevrolet to obtain funds to cover expenses (N.T. 8/17/82, pp. 64–65). The court concluded that because these vehicles were titled in Sutliff Chevrolet, they would be included in the marital assets and distributed through the master's distribution of Sutliff Chevrolet stock. We do not agree.

The vehicles were marital assets when purchased from Sutliff Chevrolet and would have been subject to distribution. When they were sold back to Sutliff Chevrolet, Mr. Sutliff received funds for them. These funds should thus be subject to distribution. To refuse to recognize this gain by the husband would allow him to obtain value for the assets in the form of the funds paid for the vehicles and also allow him to receive a percentage of the value of the vehicles as an asset of Sutliff Chevrolet in the distribution of the company stock. The wife would thus be denied a share of the funds received by husband and entitled only to a portion of the value as distributed with the dealership assets.

On remand, we direct the court to determine the value received by Mr. Sutliff for the 1975 Corvette, 1978 GMC Motorhome and 1977 Triumph motorcycle and distribute an appropriate share to Mrs. Sutliff.

■ Mrs. Sutliff's next contention is that the court erred in failing to award rent based on Mr. Sutliff's exclusive possession of the marital home. Although an award of rent is permissible, we do not deem it an abuse of discretion by the court to refuse to take such an action in the present case. Again, we evaluate the court's decision in light of the totality of the circumstances and the equitable distribution order as a whole.

■ The wife's final contention is that the equitable distribution order should compensate her for the benefits husband has enjoyed because of the assets being titled in his name. The specific assets brought into question are the property at North 25th Street which has been rented to a third party and the Commonwealth National Bank stock including the dividends paid. The court held that an award as requested by Mrs. Sutliff was not warranted because of the large sum she was to receive and in addition found no case law support for such an action.

We think this was an abuse of discretion and the wife should be awarded benefits based on her pro rata interest in the various assets.

■ We find that on remand the court should determine the dividends, if any, that have been paid since separation on all of the stock being distributed and apportion an amount to Mrs. Sutliff based on her share of the asset. As noted prior, the Commonwealth National Bank stock is not part of the stipulation agreement and Mrs. Sutliff is to receive shares of the stock in-kind. This should include any additional stock resulting from a stock split in proportion to the percentage interest provided in the original distribution order. Dividends paid on this stock should also be distributed in the same manner as the other stocks.

■ Finally, the rents received for the property at North 25th Street should be distributed after appropriate deductions are made for repairs, taxes and other expenses associated with maintaining the property as a rental unit.

In summary, we have affirmed the actions of the lower court in determining the proportions in which the parties should share in the marital assets. We remand to allow the court to establish values for the stock in American Technology, Digital Systems, Sutliff Chevrolet, Pennsylvania Leasing and B & M Chevrolet. In addition, the amount paid to Mr. Sutliff for the 1975 Corvette, 1978 GMC Motorhome and 1977 Triumph motorcylce is to be determined and distributed as a marital asset. The court is also to determine and distribute any dividends paid on the stocks listed as marital assets. The number of shares of Commonwealth National Bank to be distributed to each party is to be established and the rents received on the rental property included in the distribution order.

Remanded for actions in accordance with this Opinion. Jurisdiction is relinquished.